# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEROY BROOKS,**

        **Plaintiff,**

        -vs-        Case No.    06-C-0218

**JUDY SMITH, and**
**JOHN NIEBUHR,**

        **Defendants.**

## DECISION AND ORDER

        Plaintiff Leroy Brooks, who is currently incarcerated at Oakhill Correctional Institution, lodged this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. This matter comes before the court upon the plaintiff's petition to proceed *in forma pauperis*.

        Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is required to pay the statutory filing fee of $250.00 for this action.[1] If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee

---

[1] The plaintiff filed his complaint prior to April 9, 2006, when the filing fee for civil actions in the Eastern District of Wisconsin increased to $350.00.

of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. He has been assessed and paid an initial partial filing fee of $4.61.[2] Thus, the plaintiff shall be permitted to proceed *in forma pauperis*.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully

---

[2] The plaintiff was assessed an initial partial filing fee of $4.62. However, for reasons that are unclear, the plaintiff only submitted $4.61 to the Clerk of Court. Upon due consideration, the court will consider this as payment of the initial partial filing fee. Therefore, the plaintiff's balance of the filing fee is $245.39.

2

construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. See *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)

3

(quoting *Conley*, 355 U.S. at 47); *see also Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for pro se prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Thomson*, 362 F.3d at 970.

The plaintiff is currently incarcerated at Oakhill Correctional Institution. (Complaint at 1).[3] He was housed at Vilas County Jail (the jail) and Oshkosh Correctional Institution (OCI) at all times relevant. (Complaint at 2). Defendant Judy Smith is the Warden of Oshkosh Correctional Institution. *Id*. Defendant John Niebuhr is the Sheriff of Vilas County. *Id*. at 1.

On July 11, 2005, the plaintiff was transferred from Dodge Correctional Institution to the jail "to await a bed in a medium security prison." *Id*. at 3. He was incarcerated at the jail for six and a half weeks. *Id*. Then, on August 25, 2005, the plaintiff was assaulted by two other inmates. *Id*. The plaintiff suffered an abrasion, swelling to the forehead, a swollen right jaw and a broken right ankle. *Id*.

Shortly after the assault, the plaintiff was taken by ambulance to a local hospital in Eagle River, Wisconsin, where the medical team interviewed him. *Id*. at 4. After taking an x-ray of his right ankle, the medical team told the plaintiff and two deputies that his ankle was broken in two places. *Id*. Furthermore, "[b]oth bones supporting [the

---

[3]The complaint is eight pages long. However, the plaintiff has designated pages 1-4 as "A 254 (3), A 254(4), A - 254 (5) and A- 254 (6)," respectively. In the interest of simplicity, the court will refer to the complaint as it is numbered in the Electronic Case Filing (ECF) system, with the first page of the complaint being page number 1 and the last page of the complaint being page number 8.

4

plaintiff's] right ankle were distached (sic) from [his] leg" and were only held on by the skin. *Id*.

The plaintiff contends that he should have had surgery on his ankle immediately after the break was discovered. *Id*. Instead, "the staff at Eagle River Hospital put [him] to sleep and while [he] was out, they reset [his] ankle and wrapped it up in a H bandage." *Id*. The plaintiff submits that he was not operated on immediately because the nearest hospital capable of performing the surgery is thirty miles away and the jail lacked the staff and resources to transport the plaintiff there. *Id*. at 6.

On August 26, 2005, the plaintiff was transferred to OCI, where the emergency staff "didn't know what was going on" because the jail officials dropped him off without providing OCI with an incident report of the accident. *Id*. at 4-5. In addition, the jail staff failed to provide OCI with copies of the plaintiff's x-rays. *Id*. at 5. As a result, the plaintiff had to go through "a complete new exzamination (sic) at Mercy and the Kenndy (sic) Medical Center." *Id*. Moreover, he had to wait eight days before a surgery team at Mercy Medical Center operated on his ankle. *Id*. The plaintiff asserts that the jail and prison officials should be held responsible for their slow response. *Id*. Also, the plaintiff states that the jail does not use floor signs to advise the staff or inmates to watch out for wet, slippery floors that have been recently mopped. *Id*. at 5.

On January 26, 2006, inmate Clayborn L. Walker pleaded guilty to the charge of battery by a prisoner. *Id*. at 6. To the plaintiff's surprise, inmate Walker only received a

5

four month sentence to run consecutive to with his prior sentence. *Id*. However, Walker's crime, which is a felony, carries a penalty of up to six years. *Id*. The plaintiff complains that he was not "given the opportunity to be present to give [his] verbal input." *Id*. In addition, he was not informed by the district attorney or the victim witness coordinator that Walker was going to be offered a deal in exchange for his guilty plea. *Id*. The plaintiff believes that the jail is trying to cover up his assault. *Id*. He also states that the jail officials have discriminated against him "as a victim" by not prosecuting this case to the fullest," and by failing to produce the plaintiff in court. *Id*. at 7.

For relief, the plaintiff requests $100,000 for pain and suffering. *Id*. at 8. In addition, he asks the court to review the jail's policies concerning emergency medical treatment and wet floor signs. *Id*.

**1.     Eighth Amendment Claim**

The plaintiff contends that the defendants delayed providing him with a needed surgery because they lacked financial resources. It is unclear whether the plaintiff was a pretrial detainee when the alleged wrongdoing occurred. However, this distinction is immaterial since Eighth and Fourteenth Amendment conditions of confinement claims are analyzed under the same legal standard. *Whiting v. Marathon Co. Sheriff's Dep't*, 382 F.3d 700, 703 (7th Cir. 2004); *see also Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002) ("the protections for pretrial detainees are at least as great as the

6

Eighth Amendment protections available to a convicted prisoner, and we frequently consider the standards to be analogous.")(internal citation and quotations omitted).

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall* County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted).

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998).

7

Neither negligence nor even gross negligence is a sufficient basis for liability. See *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991).

Accepting as true the plaintiff's allegation that he suffered abrasions, swelling to the forehead, a swollen jaw and a broken ankle, he has established a serious medical need. See *Wynn*, 251 F.3d at 593 (a serious medical need is one that has been diagnosed by a physician as mandating treatment). Furthermore, the plaintiff's allegation of ulterior motives, if proven true, would show that the defendants delayed the plaintiff's surgery not on the basis of a medical opinion, but for monetary reasons. See *Chance v. Armstrong*, 143 F.3d 698 (2nd Cir. 1998)(a doctor's recommendation for an unnecessary course of treatment because of monetary incentives sufficient to state a claim for deliberate indifference to serious medical need). Thus, the plaintiff has alleged facts sufficient to proceed on an Eighth Amendment claim.

**2.     Wet Floor Signs**

The plaintiff states that the jail should use wet floor signs to alert inmates and jail officials to the presence of wet, slippery floors. To the extent that the plaintiff advances a potential claim based on the absence of wet floor signs, his allegations amount only to negligence. See *Frost v. McCaughtry*, 215 F.3d 1329, 2000 WL 767841 at *5 (7th Cir. 2000)(unpublished)(inmate's complaint that defendants failed to post wet floor signs dismissed because his allegation rose, at best, to a claim of negligence). However, negligence is not enough to sustain a claim under 42 U.S.C. § 1983. *Thomas v. Farley*, 31 F.3d 557, 558 (7th

8

Cir. 1994); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996). Thus, the plaintiff's allegations fail to rise to the level of a constitutional violation.

### 3. Prosecution of Inmate Walker

The plaintiff submits that the defendants violated his constitutional rights when: (1) they did not inform him that inmate Walker plead guilty in exchange for a reduced sentence; and (2) they failed to produce the plaintiff in court. The Executive Branch has the "exclusive authority and absolute discretion to decide whether to prosecute cases." *United States v. Nixon*, 418 U.S. 683, 693 (1974). Further, a private citizen, such as the plaintiff, has no standing to sue based on any interest in prosecution of another. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Accordingly, the plaintiff has failed to make out a constitutional claim.

### 4. Conspiracy Claim

The plaintiff contends that the defendants did not allow him to attend inmate Walker's court proceedings because they are trying to cover up his assault The court construes this as a claim that the defendants conspired to deprive the plaintiff of his constitutional rights. Conspiracy is not an independent basis of liability in §1983 actions. *Walker v. Thompson,* 288 F.3d 1005, 1008 (7th Cir. 2002)(conspiracy is merely a legal mechanism for imposing liability on defendants who did not participate directly in the violation of civil rights); *see also Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)(holding that "there is no constitutional violation in conspiring to cover-up an action

9

which does not itself violate the Constitution."). As discussed herein, the plaintiff has not stated a constitutional claim based on inmate Walker's prosecution. Thus, he has not alleged facts sufficient to state a conspiracy claim.

## 5. Equal Protection Claims

The plaintiff maintains that the defendants violated his equal protection rights when they discriminated against him because he is a victim. Specifically, he avers that defendants: (1) did not prosecute inmate Walker to the fullest extent of the law; and (2) failed to produce the plaintiff in court. To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir 1994). Generally, prisoners do not constitute a suspect class and thus state actions concerning prisoners as a group are generally not entitled to heightened scrutiny. *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged

10

regulation or practice is an exaggerated response to those concerns. See *Turner v. Safely*, 482 U.S. 78 (1987); *Caldwell v. Miller*, 790 F.2d 589 (7th Cir. 1986).

In this case, the plaintiff claims that the defendants discriminated against him because he is a victim. While this court doubts that the plaintiff will ultimately succeed on an equal protection count, the Supreme Court has indicated that such doubts should be resolved in the plaintiff's favor. *Jenkins*, 395 U.S. at 421. Thus, the plaintiff may proceed on an equal protection claim.

**6.     Official Capacity Claims**

The plaintiff avers that the jail has a policy of delaying care to inmates who require immediate medical attention. To the extent that the plaintiff seeks compensatory and punitive damages, his official capacity claims must be dismissed because of Eleventh Amendment immunity and also because the state is not a person suable under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-71 (1989)(in regard to official capacity claims, a suit against a state official in his official capacity is a suit against the state and is barred by the Eleventh Amendment). However, official capacity claims seeking injunctive relief are permissible under § 1983. *Id*. at 71 n.10.[4] Such claims require that the entity's policy or custom have played a part in the constitutional violation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

---

[4] A "state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will, 491 U.S. at 70 n. 10 (quoting *Kentucky v. Graham*, 473 U.S., at 167, n.14).

11

In the present case, the plaintiff has challenged the jail policy as unconstitutional and requested injunctive relief (review of the jail's policy). Since he has been transferred to Oakhill Correctional Facility, and is no longer subject to the policies and conditions of the Vilas County Jail, his requests for injunctive and equitable relief are moot. *Stewart v. McGinnis*, 5 F.3d 1031, 1038 (7th Cir. 1993); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990). Hence, the plaintiff may not proceed on an official capacity claim.

**7.     Personal Involvement**

The plaintiff has identified warden Judy Smith as a defendant in this action. However, the complaint fails to state facts indicating Smith's direct, personal involvement as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Nor has the plaintiff provided any facts showing that the alleged violation of his constitutional rights occurred at Smith's direction or with her knowledge and consent. *Id.* "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Moreover, the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. See *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* Accordingly, defendant Smith will be dismissed from this action.

In sum, the plaintiff may proceed on his Eighth Amendment medical care, and equal protection claims against defendant Niebuhr. Defendant Smith and the remaining claims will be dismissed as described herein.

## ORDER

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Doc. # 2) is **granted.**

**IT IS FURTHER ORDERED** that defendant Judy Smith is **dismissed.**

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4.

**IT IS ALSO ORDERED** that the defendant shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $245.39 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

13

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 12th day of September, 2006.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA**
**Chief Judge**

14

Case 2:06-cv-00218-RTR    Filed 09/12/06    Page 14 of 14    Document 5